UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

BAXTER REGIONAL MEDICAL CENTER   )
624 Hospital Drive   )
Mountain Home, AR  74653   )
   )
BRYAN MEDICAL CENTER   )   Case No.   1:18-cv-78
7501 S. 27th Street   )
Lincoln, NE  68512   )
   )
      Plaintiffs,   )
   )
      vs.   )
   )
ERIC D. HARGAN   )
Acting Secretary of the United States   )
Department of Health and Human Services   )
Room 700-E   )
200 Independence Avenue, S.W.   )
Washington, D.C. 20201   )
   )
      Defendant.

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY JUDGMENT UNDER THE MEDICARE ACT

The Plaintiff Hospitals ("Hospitals"), by counsel, for their Complaint against the

Defendant, Secretary of Health and Human Services ("Secretary"), allege and state:

**I.**

**Nature of the Action**

The Plaintiff Hospitals in this action, Baxter Regional Medical Center and Bryan Medical

Center were parties to an appeal before the Provider Reimbursement Review Board ("PRRB")

under PRRB Case No. 16-1174G.  The issue in that matter involved the treatment of Medicare

Advantage ("MA") days in the computation of the Disproportionate Patient Percentage ("DPP")

and the determination of the proper amount of the Hospitals' Disproportionate Share Hospital ("DSH") payment adjustments under Medicare.

The providers, including the Plaintiffs herein, moved the Board for expedited judicial review ("EJR") of the issue presented.  On November 14, 2017, the PRRB issued its decision on the request for EJR.  The Board granted the request for EJR allowing the appeal to be pursued in federal district court.  However, as part of the PRRB's order for EJR, the PRRB dismissed the claims of the Plaintiffs in this matter on jurisdictional grounds.  For the reasons stated below, the PRRB's determinations were erroneous.  The claims of Baxter Regional Medical Center and Bryan Medical Center should therefore be remanded to the Board for further proceedings in accordance with 42 C.F.R §405.1877.

## II.
## Jurisdiction and Venue

3.     This action arises under the Medicare Act, Title XVIII of the Social Security Act 42 U.S.C. § 1395 et seq.

4.     Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1).

5.     Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

## III.
## Parties

6.     The Plaintiffs in this action are:

(a)    Baxter Regional Medical Center, Medicare Provider Number 04-0027, for cost reporting period ending December 31, 2010; and

(b)    Bryan Medical Center, Medicare Provider Number 28-0003, for the cost reporting period ending December 31, 2010.

Both Plaintiffs are independent Hospitals that are contracted Medicare facilities that qualify under the DSH provisions of the Medicare statute.

7.      The Defendant is Eric D. Hargan, in his official capacity as Acting Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare Program.

8.      The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for the day-to-day operation and administration of the Medicare Program.

**IV.**
**Legal Background**

**A.      Qualification for Disproportionate Share Hospital Status**

10.     Part A of the Medicare Act covers "inpatient hospital services."  42 U.S.C. § 1395d(a)(1).  Since 1983, the Medicare Program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS").  42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412.  Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments.  *Id.*  One of the payment adjustments is the Disproportionate Share Hospital ("DSH") payment for hospitals that provide care for a disproportionate share of low income patients ("LIP").  *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

11.     A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates.  *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106.  A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage."  *See* 42 U.S.C. §§ 1395ww(d)(1)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1).  As a proxy for utilization by low-income patients, the disproportionate patient percentage determines a hospital's qualification as a DSH, and it also determines the amount of DSH adjustment.  42 U.S.C. §§ 1395ww(d)(5)(f)(iv) and (vii)-(xiii);

3

42 C.F.R. § 412.106(d).  The disproportionate patient percentage is defined as the sum of two

fractions expressed as percentages.  42 U.S.C. § 1395ww(d)(5)(F)(vi).

12.     The first fraction that is used to compute the DSH payment is commonly known

as the "Medicaid fraction."  The statute defines the Medicaid fraction as:

> [T]he fraction (expressed as a percentage), the numerator of which is the number
> of the hospital's patient days for such period which consist of patients who (for
> such days) were eligible for medical assistance under a State plan approved under
> [Title XIX], but who were *not entitled to benefits under part A* of [Title XVIII],
> and the denominator of which is the total number of the hospital's patient days for
> such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  As reflected in the italicized language

above, the numerator of the Medicaid fraction consists of days for patients who were both

eligible for medical assistance under Title XIX, or Medicaid, and "not entitled to benefits under

part A" of Title XVIII, or Medicare.

13.     The other fraction that is used to compute the DSH payment is the "Medicare

fraction" or "SSI fraction."  The statute defines this fraction as:

> [T]he fraction (expressed as a percentage), the numerator of which is the number
> of such hospital's patient days for such period which were made up of patients
> who (for such days) were *entitled to benefits under part A* of [Title XVIII] and
> were entitled to supplemental security income benefits (excluding any State
> supplementation) under subchapter XVI of this chapter, and the denominator of
> which is the number of such hospital's patient days for such fiscal year which
> were made up of patients who (for such days) were *entitled to benefits under part
> A* of [Title XVIII]…

42 U.S.C. §§ 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the

Medicare fraction consists solely of days for patients who were "entitled to benefits under part

A" of Medicare.  The denominator includes all part A days, whereas the numerator includes only

those part A days for patients who are also entitled to supplemental security income ("SSI")

benefits under Title XVI.  The Medicare fraction is computed for each federal fiscal year by

CMS, and must be used to compute a hospital's DSH payment adjustment for the cost reporting period beginning in the federal fiscal year.  42 C.F.R. § 412.106(b)(2)-(3).

## B.   Regulatory History of the Inclusion of Medicare Advantage Days in DSH Calculation[1]

14.     In addition to the original fee-for-service program under Medicare parts A and B, the Medicare program provides beneficiaries the option to receive services from managed care entities. *See generally* 42 U.S.C. § 1395mm.  This program, originally known as Medicare+Choice, was renamed Medicare Advantage ("MA") in 2003.

15.     The statute provides for "payment to an eligible organization under this section for individuals enrolled under this section with the organization and entitled to benefits under part A of this subchapter and enrolled under part B of this subchapter . . ."  42 U.S.C. §1395mm(a)(5).  Inpatient hospital days for Medicare beneficiaries enrolled in health maintenance organizations ("HMO"s) and competitive medical plans ("CMP"s)  prior to 1999 are referred to as Medicare HMO patient care days.  In the September 4, 1990 Federal Register, the Secretary  of Health and Human Services stated that:

> Based on the language of section 1886(d)(5)(F)(vi) of the Act [42 U.S.C. § 1395wvv(d)(5)(F)(vi)], which states that the disproportionate share adjustment computation should include "patients who were entitled to benefits under Part A," we believe it is appropriate to include the days associated with Medicare patients who receive care at a qualified HMO. Prior to December 1, 1987, we were not able to isolate the days of care associated with Medicare patients in HMOs, and therefore, were unable to fold this number into the calculation [of the DSH adjustment]. However, as of December 1, 1987, a field was included on the Medicare Provider Analysis and Review

---

[1] See http://www.medicare.gov/glossary/m.html. (A Medicare Advantage Plan is a type of Medicare health plan offered by a private company that contracts with Medicare to provide beneficiaries with all Part A and Part B benefits. Medicare Advantage Plans include Health Maintenance Organizations, Preferred Provider Organizations, Private Fee-for-Service Plans, Special Needs Plans, and Medicare Medical Savings Account Plans. If a beneficiary is enrolled in a Medicare Advantage Plan, Medicare services are covered through the plan and are not paid for under Original Medicare. Most Medicare Advantage Plans offer prescription drug coverage.) (last visited August 4, 2014).

> (MEDPAR) file that allows us to isolate those HMO days that were associated with
> Medicare patients. *Therefore, since that time we have been including HMO days in the*
> *SSI/Medicare percentage [of the DSH adjustment].*

55 Fed. Reg. 35,990, 39,994 (September 4, 1990) (emphasis added).  The same provision

establishes that at that time, Medicare Part A paid for HMO services, and patients continued to be

eligible for Part A.

### C.    Medicare Part C

16.    With the creation of Medicare Part C in 1997, Medicare beneficiaries who opted

for managed care coverage under Medicare Part C were no longer entitled to have payment made

for their care under Part A. Consistent with the statutory change, CMS did not include Medicare

Part C days in the SSI ratios used by the intermediaries to calculate DSH payments for the FY

2001-2004.[2]  The result of this policy would have placed MA Days in the Medicaid Fraction in

the count of total hospital days or in the count of Medicaid eligible days in the event the MA

enrollee was also eligible for Medicaid.  However, in response to confusion from providers

concerning the placement of MA Days within the DSH calculation, the Secretary proposed to

clarify her policy regarding MA Days in the FFY 2004 Inpatient PPS Proposed Rule:

> Therefore, we are proposing to clarify that once a beneficiary elects Medicare Part
> C, those patient days attributable to the beneficiary should not be included in the
> Medicare fraction of the DSH patient percentage. These patient days should be
> included in the count of total patient days in the Medicaid fraction (the
> denominator), and the patient's days for the M+C beneficiary who is also eligible
> for Medicaid would be included in the numerator of the Medicaid fraction.

68 Fed. Reg. 27154, 27208 (May 19, 2003).  Also of note, the Secretary did not note a "major"

financial impact associated with this proposal.  68 Fed. Reg. at 27416.  This proposal was not

finalized in the FFY 2004 Final Rule.

---

[2] 69 Fed. Reg. 48,918, 49,099 (August 11, 2004).

17.     In the FFY 2005 Inpatient PPS Final Rule, the Secretary made a complete about-face and decided MA days should be counted in the Medicare Fraction for DSH because "they are still, in some sense, entitled to benefits under Medicare Part A." 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004).  This policy was incorporated into the DSH regulation at 42 C.F.R. § 412.106(b)(2) without any opportunity for hospitals to comment on the change of position.

18.     The effect of this regulatory change was negative for most hospitals.  Many MA patients are not also receiving SSI and/or Medicaid.  The 2004 change added many days to the denominator of the Medicare Fraction, which is total Medicare Part A days, and did not add very many days to the numerator, which is SSI Days.  This had the effect of reducing the SSI percentage that results from the Medicare fraction.  Under CMS's prior policy, the MA patient days were mostly counted in the denominator of the Medicaid Fraction, which is total hospital inpatient days and in the numerator if they were also Medicaid.  This did not have the negative effect that the FFY 2005 rulemaking had on most hospitals' DSH reimbursement.

19.     Although the change in policy regarding 42 C.F.R. § 412.106(b)(2)(B) was included in the August 11, 2004 Federal Register, no change to the regulatory language was published for three years until the FFY 2008 Inpatient PPS Final Rule.  In that publication, the Secretary stated that no regulatory change had in fact occurred and announced that she had made "technical corrections" to the regulatory language consistent with the change announced in the FFY 2005 Final Rule. As a result, MA days were required to be included in the Medicare fraction as of October 1, 2004.   In the Federal Register notice for the FFY 2008 Final Rule, the Secretary made the following comments:

> In the FY 2005 IPPS final rule (69 Fed. Reg. 49,099), we discussed in the preamble our policy change to reflect the inclusion of the days associated with Medicare+Choice (now Medicare Advantage) beneficiaries under Medicare Part C in the Medicare fraction of the DSH calculation. In that rule, we indicated that

we were revising the regulation text at [42 C.F.R.] § 412.106(b)(2)(i) to
incorporate this policy. However, we inadvertently did not make a change in the
regulation text to conform to the preamble language. We also inadvertently did
not propose to change § 412.106(b)(2)(iii) in the FY 2005 final rule, although we
intended to do so. Section 412.106(b)(2)(i) of the regulations discusses the
numerator of the Medicare fraction of the Medicare disproportionate patient
percentage (DPP) calculation while § 412.106(b)(2)(iii) of the regulations
discusses the denominator of the Medicare fraction of the Medicare DPP. We
intended to amend the regulation text with respect to both the numerator and the
denominator of the Medicare fraction of the Medicare DPP. Therefore, in this
final rule with comment period, we are making this technical correction to §
412.106(b)(2)(i) and to § 412.106(b)(2)(iii) to make them consistent with the
preamble language of the FY 2005 IPPS final rule and to effectuate the policy
iterated in that rule.

With respect to the technical correction that we are making to § 412.106(b)(2)(iii),
we note that we ordinarily publish a notice of proposed rulemaking in the Federal
Register to provide for a period for public comment before a provision such as
this would take effect. However, we can waive this procedure if an agency finds
good cause that a notice and comment procedure is impracticable, unnecessary, or
contrary to the public interest and incorporates a statement of the finding and its
reasons in the notice issued. We find it unnecessary to undertake notice and
comment rulemaking in this instance for the additional change to
§ 412.106(b)(2)(iii) because this notice merely provides technical corrections to
the regulations and does not make any substantive changes to the regulations or
our existing policy. Therefore, under 5 U.S.C. 533(b)(B), for good cause, we
waive notice and comment procedures.

72 Fed. Reg. 47,130, 47,384 (August 22, 2007).

D.    **Medicare Appeals Processes**

20.    The Secretary contracts with private organizations (usually insurance companies)

to perform certain audit and payment functions under part A of the Medicare program.  These

organizations are commonly referred to as "intermediaries" or "Medicare Administrative

Contractors ("MAC")".

21.    After the close of each fiscal year, a hospital is required to file a cost report with

its designated MAC.  42 C.F.R. §§413.20, 412.24.

22.    The MAC analyzes the cost report and issues a determination, called a Notice of

Program Reimbursement or "NPR," that informs the hospital of the MAC's final determination

as to the amount of Medicare reimbursement due the hospital for the fiscal year covered by the

cost report.  *See* 42 C.F.R. §405.1803. The issuance of an NPR is a final agency decision.  *Id.*

23.    The Provider Reimbursement Review Board ("PRRB") is an administrative

tribunal appointed by the Secretary.  *See* 42 U.S.C. §1395oo(h).  Each of the appointed members

of the PRRB must be "knowledgeable in the field of payment to providers of service" under the

Medicare program.  *Id.*

24.    Pursuant to 42 U.S.C. §1395oo(a)(1)(A)(i), a  hospital may appeal to the PRRB if

the hospital is dissatisfied with a MAC's determination as to the amount of Medicare payment

due the hospital for a cost reporting period as reflected in an NPR.

25.    A hospital may take an appeal to the PRRB individually or may pursue a group

appeal of an issue that is common to two or more hospitals.  *See* 42 U.S.C. §1395oo(a) and (b);

42 C.F.R. §§ 405.1835 and 405.1837.

26.    The amount in controversy for a group appeal to the PRRB is $50,000 in the

aggregate.  *See* 42 U.S.C. §1395oo(b); 42 C.F.R. §§405.1835 and 405.1837.

27.    In 1980, Congress amended the Medicare statute to permit a hospital to obtain

expedited judicial review of a "question of law or regulations relevant to the matters in

controversy" in an appeal to the PRRB when "the Board determines … that it is without

authority to decide the question."  *See* 42 U.S.C. §1395oo(f)(1); *see also* 42 C.F.R.

§405.1842(a)(1).

28.    The statute provides that the PRRB decision finding that it lacks authority to

decide a question of law "shall be considered a final decision and not subject to review by the

Secretary" *See* 42 U.S.C. §1395oo(f)(1).  The statute also grants a hospital the right to obtain

judicial review of that question of law by initiating an action in this Court within 60 days of the

PRRB's determination.  *Id.*

29.     The hospitals, including the Plaintiffs, filed timely appeals challenging their DSH

payments calculated by CMS for the cost reporting period beginning in federal fiscal year 2010.

The hospitals contend that the Secretary's determination of the SSI and Medicaid fractions are

invalid because Part C Medicare Advantage days are days for patients who are not "entitled to

benefits under [Medicare] Part A," *see* 42 U.S.C. §1395ww(d)(5)(F)(vi)(I), and therefore should

be excluded from their SSI fractions and included in their Medicaid numerator if the Medicare

Advantage days are also Medicaid.

30.     All of the hospitals, including the Plaintiffs, requested that the PRRB grant EJR of

the validity of the Secretary's determination to include Part C Medicare Advantage days in their

SSI fractions.

31.     On November 14, 2017, the PRRB granted EJR allowing the appeal to advance to

federal district court.  However, as part of the PRRB order for EJR, the Board erroneously

dismissed the claims of the Plaintiffs on jurisdictional grounds.

## V.
## The Board Improperly Dismissed the Plaintiffs' Claims

**A.     Bryan Medical Center**

32.     In dismissing Bryan Medical Center ("Bryan") from the appeal, the PRRB noted

that on  appeals of original NPRs providers must preserve their rights to claim dissatisfaction

with the amount of Medicare payment for a specific item, by either including a claim for the

specific item on the cost report, or file the cost report under protest for the specific item.

42 C.F.R. §405.1835(a)(1).

33.     The PRRB claimed that it lacked jurisdiction over Bryan's appeal since "the list

of protested amounts … does not identify Medicare Part C as a protested matter as required

under the regulation.  The Board concluded that since Medicare Part C was not protested nor did

the Provider identify an adjustment to the SSI percentage, it lacked jurisdiction over the appeal.

34.     The PRRB's conclusion that Medicare Part C was not protested by Bryan was

erroneous.  A review of the documentation submitted to the MAC in support of Bryan's appeal

indicates that MA Days were included in the protest calculations for the protested items.

35.     Even more compelling, the PRRB ignored the fact that Bryan's appealed the

adjustment made by the MAC to its SSI ratio in its Fiscal Year 2010 cost report. That adjustment

revised the hospital's SSI days, their Medicare days and their Medicare Advantage Days within

both of those sets of days.

### B.     Baxter Regional Medical Center

36.     The PRRB Order granting EJR Status to the providers also included a finding that

it lacked jurisdiction over Baxter Regional Medical Center's ("Baxter") claim because it was

appealing from a revised notice of program reimbursement which did not adjust MA Days.

37.     The PRRB claimed that it lacked jurisdiction over the question because

"[p]ursuant to the regulation, 42 C.F.R. §405.1889, where a revision is made to an intermediary's

determination, the revision is considered a separate and distinct determination for purposes of

appeal under the provisions of 42 C.F.R §404.1835."  As such, the Board concluded that "only

those matters that are specifically revised are within the scope of any appeal" from the revised

NPR. The Board found that it lacked jurisdiction over Baxter's appeal and dismissed its appeal.

38.    The PRRB, however, completely overlooked the fact that Baxter's appeal

specifically included an appeal of the adjustment made by the MAC to Baxter's Medicaid

fraction, which includes MA days, in the calculation of its Disproportionate Patient Percentage.

39.    The Board's determination was incorrect since the revised NPR specifically

adjusted the Medicaid fraction. On appeal, Baxter raised the MA days issue which impacts both

the Medicare fraction and the Medicaid fraction. Baxter therefore properly preserved and raised

an issue "specifically related" to the revision in the revised NPR and the PRRB has jurisdiction

to consider the appeal. *See* 42 C.F.R. §405.1889.

## VI.
## Prayer for Relief

WHEREFORE, the Plaintiff Hospitals respectfully pray as follows:

A.    For an Opinion and Order of the Court finding that the PRRB erred in
dismissing the Plaintiffs' appeals;

B.    For an Opinion and Order reinstating the Plaintiffs' appeals with the PRRB,
allowing them to move forward separately for these Plaintiff Hospitals;

C.    For all costs and attorney fees incurred herein; and

D.    For any and all other relief to which Plaintiffs is entitled.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.


By:   /s/ N. Kent Smith
     N. Kent Smith, Attorney No. 1777-49
     500 North Meridian Street, Suite 400
     Indianapolis, IN  46204-1293
     Ph:  (317) 633-4884
     Fax: (317) 633-4878
     Email:  ksmith@hallrender.com
     *Attorneys for Plaintiffs*

13